IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Bradley J. Crane, a single man, | ) | No. CV 06-0092-TUC-FRZ (HCE) |
| | ) | |
| Plaintiff/Counterdefendant, | ) | **REPORT & RECOMMENDATION** |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| Native American Air Ambulance, Inc., a | ) | |
| Nevada Corporation, | ) | |
| | ) | |
| Defendant/Counterclaimant. | ) | |
| | ) | |
| | ) | |

By Order of the District Court dated September 1, 2006 (Doc. No. 20) this action is referred to the undersigned Magistrate Judge pursuant to Rule 72(b) and Rule 54(d)(2)(D) of the Federal Rules of Civil Procedure to determine the issue of liability for attorneys' fees prior to evaluation of services for same. On September 20, 2006 the parties filed simultaneous requests for attorneys' fees.

For the reasons stated herein, the Magistrate Judge recommends that the District Court award Defendant/Counterclaimant Native American Air Ambulance, Inc. (hereinafter "Defendant") attorneys' fees to be paid by Attorney Douglas H. Clark, Jr. (hereinafter "Attorney Clark"), attorney for Plaintiff/Counterdefendant Bradley J. Crane (hereinafter

1

"Plaintiff"), in an amount to be determined by future Report and Recommendation.  In making this recommendation, the undersigned Magistrate Judge has considered all pleadings filed by the parties; exhibits attached to such pleadings; and the Court has taken judicial notice of pleadings filed in Pima County Superior Court in *Bradley J. Crane v. Thomas G. Miller,* No. C20054294 (hereinafter "*Crane v. Miller*").

## I.  FACTUAL & PROCEDURAL HISTORY

On October 4, 2003, Plaintiff was involved in a motor vehicle accident in Maricopa County.   Plaintiff was insured by medical insurance company, Great West/Health One (hereinafter "Great West").  (Joint Report, pp. 1, 2) Plaintiff maintains that the accident was in part the fault of the adverse driver, Mr. Thomas G. Miller (hereinafter "Miller") who was insured by Farmers Insurance Company (hereinafter "Farmers").  (Joint Report, p.4)

Plaintiff asserts that he was seriously hurt in the accident and received substantial medical treatment wherein liens against the adverse driver and Farmers were filed totaling $23,487.41 (Joint Report, p.4) Plaintiff was provided medical services by Defendant when it transported him by air ambulance from the accident scene to a hospital.  Plaintiff was charged $12,825 for this transportation.  (Joint Report, p.1; First Amended Complaint (hereinafter "FAC"), ¶5) Plaintiff never requested such services nor did he agree to the amount to be paid for such services and asserts he did not need such services.  (FAC, ¶7)

Plaintiff has also maintained that he received a relatively minor whiplash injury to the back;  was conscious at the scene; had normal life signs; and communicated coherently with paramedics and sheriff's officers.  (Plaintiff's Opposition to Motion for Attorneys' Fees and Costs (hereinafter "Plaintiff's Opposition"), p.2)[1] Plaintiff would minimally have to concede

---

[1]Attorney Clark in his November 14, 2005 letter to Defendant c/o Revenue Enhancement Specialists (hereinafter "RES") wherein he asked Defendant to compromise the $12,825 debt by half stated that: "Mr. Crane has not recovered fully from his injuries and is still having difficulty finding a job that does not affect his injuries."  (Defendant's Motion for Attorneys' Fees and Memorandum of Points and Authorities in Support of Motion for Attorneys' Fees (hereinafter "Defendant's Motion"), Ex. 1)

that he was legally intoxicated at the time of the accident and by Attorney Clark's characterization would "not make a sympathetic witness" at trial. (Defendant's Motion, p. 1, Ex. 1)

Defendant maintains that on October 4, 2003, Rural Metro Ambulance Service responded to the scene of the accident involving Plaintiff and Miller. Rural Metro Ambulance Service determined that Plaintiff needed to be transported by air ambulance to the nearest available Trauma Level 1 medical facility and, consequently summoned Defendant to transport Plaintiff to Scottsdale Osborn Hospital. (Defendant's First Amended Answer to First Amended Complaint and First Amended Counterclaims (hereinafter FAA/FACC), pp. 13-14)   Further, Defendant was obligated to provide such services and Plaintiff, having received the benefit of such services, was obligated to pay for same. (FAA/FACC, pp. 14-15)

Defendant maintains and Plaintiff admits that: in mid-October Defendant began contacting Great West requesting payment for air evacuation provided Plaintiff (FAA/FACC, p.15; Plaintiff's  Reply to First Amended Counterclaim (hereinafter "Plaintiff's Reply to FACC")  p.1); on October 29, 2003 and August 8, 2005, Defendant filed a Notice of Claim of Healthcare Provider's Lien in the office of the County Recorder of Maricopa County pursuant to A.R.S. §33-931 et seq. regarding Plaintiff (Joint Report, p.4, Ex. A, B); on or about December 10, 2003 Defendant sent an invoice for the amount in question to Plaintiff (FAA/FACC, p.15); on or about January 26, 2004 Defendant telephoned Plaintiff regarding Great West's non-payment and Plaintiff informed that Plaintiff had received the invoice, had contacted his attorney and that either he or his attorney would be contacting Defendant. (FAA/FACC, p.15; Plaintiff's Reply to FACC, p.1; Joint Report, p.4, Ex. A)

Defendant submitted its claim for payment in the amount of $12,825 to Great West but such claim was denied on March 10, 2004 as not meeting the qualifications for emergency/urgent care.  (Joint Report, p. 4, Ex. C)

3

Defendant maintains and Plaintiff admits that neither Plaintiff nor Attorney Clark contacted Defendant until August 6, 2004 when Attorney Clark sent Defendant a request for Plaintiff's medical records.  (FAA/FACC, p.15; Plaintiff's Reply to FACC, p. 1) On August 9 and September 8, 2004, in response to a letter from Attorney Clark, Attorney Clark received correspondence that Plaintiff's debt for collection was assigned to Jack's Medical Billing Services, Inc. (hereinafter "Jack's")  together with medical provider lien forms (Joint Report, p.5, Ex. D) In August or September 2004 Defendant also referred collection of the debt to RES.  (FAA/FACC, p.15) On June 6, 2005, RES sent Attorney Clark an invoice for the outstanding debt owed it by Plaintiff.  (FAA/FACC, p.15; Plaintiff's Reply to FACC, p.1) "In the end the collection agencies could never agree which agency held the valid assignment and could never produce evidence of the assignment by [Defendant]...[f]urther Plaintiff had no proof that [Defendant] actually assigned the account to either collection agency." (Plaintiff's Brief on Issue of Liability and Entitlement of Attorneys' Fees (hereinafter "Plaintiff's Brief") p.4)

On June 3, 2005, Attorney Clark was advised by RES that an insurance appeal had been filed with Great West, which was denied, and that $12,825 was due from Plaintiff for air evacuation provided Plaintiff on October 4, 2003.  (Joint Report, pp. 4-5)

For nearly two years Attorney Clark had made efforts to settle Plaintiff's case with Miller  for amounts in excess of the liens for various medical services provided Plaintiff as a result of the motor vehicle accident of October 4, 2003, but to no avail.  Before the statute of limitations was to run, Plaintiff filed suit on August 2, 2005 in *Crane v. Miller*.  (Joint Report, p.5; FAA/FACC, p.16) Miller was represented by Attorney for Farmers Ms. Cynthia L. Choate (hereinafter "Attorney Choate").   On that same date Attorney Clark was sent correspondence that Plaintiff's debt for collection was assigned to RES (Joint Report, p.5, Ex. E)

On November 10, 2005, Attorney Choate in *Crane v. Miller* filed a Notice of Settlement in Pima County Superior Court advising that the matter "has been settled between

4

the parties.  The parties will execute and submit a Stipulation and Order for Dismissal, with Prejudice, to the Court within the next 60 days."[2]

Four days later, on November 14, 2005, Attorney Clark sent correspondence by fax to Defendant c/o RES seeking to negotiate a compromise of Plaintiff's debt to Defendant by half.  (Defendant's Motion, p.5, Ex. 1) Therein Attorney Clark explained that Farmers had extended an offer of $70,000 to settle the case and that Plaintiff would accept such offer if each medical provider who was owed money would compromise their outstanding balance by at least fifty percent.  Attorney Clark also informed that if the compromise was not acceptable he was "...not sure what will happen.  For various reasons, [he] probably will ask [Plaintiff] to find another attorney to represent him from this point forward." (Id.) Moreover, Attorney Clark in his correspondence to Defendant c/o RES stated:

> I would like to settle this case now.  Bradley will not accept the current settlement offer unless he will have some money to compensate him for his injuries and future medical expenses.  To accomplish such a settlement, we **must** negotiate a reasonable amount to be paid to all providers toward his outstanding bills/liens of below 50%, and my compromised fees need to be paid.  Please let me hear from you immediately so I will know how to proceed. Time is of the essence.

(Id.) (emphasis in original).

In response to Attorney Clark's November 14, 2005 letter to negotiate a compromise, Defendant by RES responded by fax on November 15, 2005 to Attorney Clark requesting a sworn affidavit from Attorney Clark that would include:

1. A complete list of all lienholders and the amounts of their liens.
2. The amount of the expected recovery.
3. Attorneys' fees, costs, and any amount being requested for the patient's pain and suffering.

---

[2]Rule 5.1(c) of the Arizona Rules of Civil Procedure states that: "It **shall** be the duty of counsel,..., to give the judge...assigned the case or matter, the clerk of court and court administrator prompt notice of the settlement of any case or matter set for trial, hearing or argument before the trial, hearing, argument or matter awaiting court ruling...."  (emphasis added). There is nothing in the record that indicates this Notice of Settlement was filed without Attorney Clark's assent.

Based on this information, if the recovery amount was in excess of the aggregate of the aforementioned items the requested reduction was to be denied by RES.  On the other hand, if the recovery amount was less than the aggregate of the aforementioned items then RES would agree to accept a portion of the recovery consistent with its percentage of the aggregate of the claims.  Ten percent of the recovery amount was to be factored into the equation for the patient's pain and suffering.  (Defendant's Motion, Ex. 2)

On November 15, 2005 Attorney Clark signed and faxed to RES a hand-written note on the RES faxed cover sheet stating: "11/15/05 NO thanks.  Don't call again – /s/." (Defendant's Motion, Ex. 3)

Attorney Clark and Attorney for Defendant, Mr. David A. Selden, aver that in November of 2005 *Crane v. Miller* was settled.[3]  (Joint Report, p.2)  Plaintiff, various medical providers of services relating to Plaintiff's motor vehicle accident, and Plaintiff's attorneys received payment in the amount of $70,000 from Farmers.  (Joint Report, p.2) Sent to Attorney Clark on January 25, 2006 were six settlement checks including check number 1015218833 dated January 20, 2006 made out jointly to Attorney Clark, Plaintiff and Defendant in the amount of $12,825.  (Defendant's Motion, Ex. 4; Joint Report, p.5 & Ex. G) In an accompanying letter, Farmers stated:

> By negotiating and depositing the enclosed checks, you are agreeing to satisfy from the proceeds of this settlement all outstanding hospital liens, medical liens, chiropractic liens, or any other liens of any kind incurred in this matter. If you do not agree to satisfy all outstanding liens, then **immediately** return the enclosed checks to our office.

(Defendant's Motion, Ex. 4) (emphasis in original)

---

[3]Attorney Clark has also averred: "After the personal injury litigation was filed, Plaintiff's counsel was finally able to negotiate a settlement for Plaintiff which agreement occurred near the end of 2005.  While counsel for Plaintiff was attempting to negotiate a settlement with Farmers Insurance, he was also trying to negotiate a compromise of the lien of Native American Air Ambulance,...." (Plaintiff's Brief, p.4)

Attorney Clark never advised Defendant of the check's existence or the issuance of such by Farmers and simply retained the check in Attorney Clark's file uncashed.[4] (Joint Report, pp. 3, 6) Moreover, Defendant only learned of the existence and issuance of this check when Defendant received a response to a subpoena issued to a third party. (Defendant's Motion for Attorneys' Fees under Rule 16, 54(d) and 28 U.S.C. § 1927, p.2)

On January 26, 2006 Plaintiff through Attorney Clark filed a civil complaint against Defendant in Pima County Superior Court.  (*Bradley J. Crane v. Native American Air Ambulance, Inc.,* No. C20060486) which was not served upon Defendant.  (Defendant's Notice of Removal, p.1)

On January 31, 2006, the FAC was filed and served on Defendant on behalf of Plaintiff and all others similarly situated as a class action by Attorney Clark,  alleging *inter alia* breach of implied warranty in that the amount charged by Defendant was not a customary and reasonable charge for services rendered and the reasonable value for such was substantially less.   (FAC, ¶9) Moreover, by improperly, illegally, unreasonably, unconscionably, unfairly, and discriminatorily charging Plaintiff more than the reasonable value for its services and less than it charged others for the same services, Defendant breached the implied duty of good faith and fair dealing in the contract and had proceeded against Plaintiff in bad faith.  (FAC, ¶12) Plaintiff alleged damages in excess of $10,000 and for relief requested (1) damages; (2) declaratory and injunctive relief; (3) an award of punitive damages; and (4) an award of attorneys' fees. (FAC, ¶¶ 14, 18, 19, 22(b)(v) and (vi), 23)

---

[4]After Attorney Clark filed the instant class action, Plaintiff was no longer concerned with whether Defendant's charges for its medical services to him were reasonable since it was paid by Great West. (Joint Report, p.7) "The check was retained in Plaintiff's counsel's file, uncashed, until recently when it was returned to Attorney Cynthia Choate for reissuance, as the lien of Native American Air Ambulance had been satisfied and so acknowledged by its attorneys."  (Joint Report, p.6) In fact, another check was reissued to Plaintiff and Attorney Clark by Farmers.  (Plaintiff's Brief, p.5) It is unknown in what amount and for what purpose this check was reissued.

Attorney Clark states that before the instant action was filed he did research to determine what regulations govern fees charged by air ambulance services and "what such reasonable and customary charges were in the industry." (Plaintiff's Brief, p. 5) He found that there were no regulations regarding the charges of air ambulance companies like there are "for regular ambulance companies." (Id.) He found that the charge approved by the State of Arizona Health Care Cost Containment System as reasonable is $4,000. (Id.) Further, he concluded that statutes such as A.R.S. § 36-2239 that apply to the rates of ambulance services do not cover air ambulances.[5] Attorney Clark also alleged that Plaintiff retained him as counsel who has experience and success in representing parties in class actions. (FAC, ¶22(d))

On January 31, 2006, Attorney Clark and Attorney Choate signed a Stipulation for Dismissal With Prejudice and filed same on February 6, 2006 in *Crane v. Miller* in No.C20054294.

On February 23, 2006 Defendant filed a time-compliant Notice of Removal pursuant to 28 U.S.C. §1446(b) in United States District Court. Therein, Defendant alleged complete diversity and original jurisdiction in the District Court in that the amount in controversy exceeded $5,000,000 in the aggregate by class action pursuant to 28 U.S.C. §1332. Moreover, Defendant alleged and gave notice to Plaintiff that this class action was completely preempted by the Airline Deregulation Act (hereinafter "ADA") as codified in 49 U.S.C. §41713(b)(4)(A) because such state action would ask this Court to set the rates and prices that Defendant may charge.

---

[5]Ambulance services are entitled to automatic rate increases under certain specific and narrow provisions. A.R.S. §§36-2234(E), and 36-2239(A). "Ambulance service" means a person who owns and operates one or more ambulances. A.R.S. §36-2201(5). "Ambulance" means any publicly or privately owned surface, water or air vehicle which includes a helicopter. A.R.S. §36-2201(3).

On March 2, 2006 Defendant filed in United States District Court an Answer and Counterclaim to Plaintiff's FAC.  On March 21, 2006 Defendant filed in United States District Court its FAA/FACC.

Defendant alleged that Plaintiff's claims were barred in pertinent part by the doctrine of unclean hands in that:  (1) Plaintiff failed to pursue an appeal to Great West for payment of medical services provided Plaintiff by Defendant; (2) Plaintiff refused to respond to Defendant's request for documentation or information that would support Plaintiff's request for a compromise of the cost of Defendant's medical services rendered; (3) Plaintiff accepted a settlement for medical expenses which included the specific cost of air evacuation provided to Plaintiff by Defendant.  (FAA/FACC, p.9)

Defendant also alleged and gave notice as an affirmative defense to Plaintiff that Plaintiff's class action complaint would seek to regulate, as a matter of state law, the rates and prices for air ambulance services, which action is preempted by the ADA as codified at 49 U.S.C. § 41713(b)(1).  (FAA/FACC, p.10)  Plaintiff alleged that he was without sufficient knowledge and information to form a belief as to the truth of this allegation and therefore denied it.  (Plaintiff's Reply to FACC, pp. 1-2)

Defendant further alleged that Plaintiff's claims were groundless, without foundation, and brought in bad faith to harass Defendant.  Consequently, Defendant had to retain counsel to represent it in the instant class action incurring costs and attorneys' fees.  Defendant for relief requested: (1) judgment against Plaintiff; (2) costs and attorneys' fees; (3) sanctions upon Plaintiff and Plaintiff's attorney in bringing the action.  (FAA/FACC, pp.11-12, 19, 21, 22)  As of the filing of Defendant's FAA/FACC Defendant had not been paid by Plaintiff for air evacuation Defendant provided Plaintiff on October 4, 2003.

After the filing of Plaintiff's class action, Defendant withdrew its account from collection agencies Jack's and RES and submitted its second request for payment from Great West.  (Joint Report, p.6)  Plaintiff alleges that without his knowledge or consent Defendant "somehow got Great West to reconsider its previous denial of the claim" and Defendant "all

of a sudden after two and one half years, coincidentally **'received payment from Plaintiff's medical insurance carrier paying Native Air directly, in full, for its bill.'"** (Plaintiff's Brief, pp. 5-6, 7; Plaintiff's Opposition, p.3) (emphasis in original)

Plaintiff maintains that he was "clearly not trying to use the litigation system as a 'source of income.' All Plaintiff was trying to do was resolve his personal injury claim and his dispute with Native Air concerning what he considered to be an unjustified overcharge for services he never requested. (Plaintiff's Opposition, p.5) However: "[i]n an effort to compromise the claim of [Defendant], and to settle what Plaintiff believed was an overcharge to him for a service that he believed was unjustified, unconscionable and unreasonable and that he never requested, to determine a reasonable charge for the services, and to determine what entity, if any, was legally entitled to payment, Plaintiff started this action in Pima County Superior Court, on behalf of himself requesting that the action be approved as a class action by the court." (Plaintiff's Brief, p.5)

Defendant having been paid by Great West in full for air evacuation services this action was dismissed as moot by order of the District Court on July 6, 2006 based upon the District Court's finding pursuant to the statements set forth by the parties in the Joint Report filed June 13, 2006 that there was no case or controversy before the Court for adjudication.

**II.   LAW**

A.   SUCCESSFUL PARTIES

Pursuant to statute an award of attorneys' fees by a trial court is permissive:

> [i]n any contested action arising out of a contract, express or implied, the Court **may** award the successful party reasonable attorney fees....

A.R.S. § 12-341.01(A) (emphasis added). This statute is remedial in nature and is equally available to one who is a successful defendant in an action as to one successfully seeking affirmative relief. *Moses v. Phelps Dodge Corp.,* 826 F.Supp. 1234, 1236 (D.Ariz. 1993)(*citing Schwartz v. Farmers Ins. Co.,* 166 Ariz. 33, 38, 800 P.2d 20, 25 (App. 1990)). The statute makes no reference to adjudication on the merits as a prerequisite to the recovery

of attorneys' fees as a successful party. *Wagenseller v. Scottsdale Memorial Hospital,* 147 Ariz. 370, 392, 710 P.2d 1025, 1047 (1985), *superseded by statute on other grounds*. Rather, in determining who is the "successful party" the court considers the totality of the circumstances and the relative success of the litigants. *McAlister v. Citibank,* 171 Ariz. 207, 261, 829 P.2d 1253, 1262 (App. 1992). Since the statute is permissive, whether attorneys' fees should be awarded to the "successful party" is within the sole and sound discretion of the trial court, which will not be disturbed on appeal if any reasonable basis exists for it. *Sanborn v. Brooker & Wake Prop. Mgmt.,* 178 Ariz. 425, 430, 874 P.2d 982, 987 (App. 1994); *Lacer v. Navajo County,* 141 Ariz. 392, 395, 687 P.2d 400, 403 (App. 1984).

The question of whether Plaintiff had minor injuries, was conscious and unrequesting of air evacuation services is of no moment. Ambulance service providers, be they ground or air transporters, are required to respond to emergency medical situations when dispatched by a responsible party and cannot refuse to transport a patient. *Samaritan Health Servs. v. Arizona Health Care Cost Containment Sys. Admin.,* 178 Ariz. 534, 538, 875 P.2d 193, 197 (App. 1994) (citing Ariz. Comp.Admin.R. & Regs (A.C.R.R.) R9-13-1002(A)(2) and R9-13-1415(F)(1)) Furthermore:

> Reimbursement for emergency ambulance services "is limited to the cost of transporting patients in a ground or air ambulance to the nearest appropriate provider or medical facility capable of meeting the patient's medical needs, when no other means of transportation is both appropriate or available."

*Id.* n. 5 (citing A.C.R.R. R9-22-211(A)(1)).

In the instant action there was an implied contract between Plaintiff and Defendant when Defendant provided air evacuation transportation on October 4, 2003 from the scene of the accident in Maricopa County to Scottsdale Osborn Hospital. The cost incurred by Plaintiff and owed Defendant on that date by the implied contract was $12,825.

Plaintiff in his FAC alleged that: (1) Defendant charged Plaintiff an unjustified, unconscionable and unreasonable amount for the air evacuation transportation provided him on October 4, 2003; (2) the reasonable value for such services is substantially less than

charged and that has been charged others; and (3) Defendant charged Plaintiff wrongfully, intentionally, improperly, illegally, unreasonably, unfairly, and discriminatorily.  In doing so, Defendant is alleged to have breached the implied duty of good faith and fair dealing.

Farmers' proposed willingness to pay Defendant the full cost of $12,825 for air evacuation transportation and Great West's actual payment to Defendant of the full cost of $12,825 for those same services suggests that before and after the filing of Plaintiff's class action two insurers did not take issue with the amount of Defendant's charges for air evacuation provided Plaintiff on October 4, 2003.  The $12,825 charged by and ultimately paid to Defendant was the customary charge for transportation of Plaintiff in compliance with A.R.S. §33-931(A).  Consequently, Plaintiff's allegations are seriously and substantially undercut and belie his claims.

Plaintiff in his FAC sought certification of the class as:

all persons in Arizona who were airlifted by Native American Air Ambulance Inc., from various locations to hospitals or medical facilities and did not specifically request the services and did not consent in writing to the fees to be charged.

Plaintiff further alleged as common questions of law and fact whether: (1) Defendant's charges are  unreasonably high for transporting persons who did not request such services; (2) Defendant breached the implied covenant of good faith and fair dealing; and (3) Defendant devised and deployed a scheme or artifice to overcharge persons transported by Defendant who had not requested to be transported by Defendant and had not agreed in writing to the fees charged.  Consequently, Plaintiff and  potential class asked for declaratory, preliminary and permanent injunctive relief, and an award of punitive damages, general damages and an award of attorneys' fees.  Moreover, Plaintiff asked for a declaration that Defendant's charges were unfair, arbitrary, unconscionable and/or unreasonable; and to void Defendant's lien as unreasonable.

By virtue of Great West paying Defendant the full cost of $12,825 for services provided Plaintiff, Plaintiff was no longer eligible to be a class plaintiff.  The parties agreed

that there was no case or controversy before the Court and the parties filed a stipulation for dismissal of this removed action. Plaintiff did not prevail on the merits, let alone, substantiate his allegations and claims.  Consequently, none of Plaintiff's requested relief was granted. Dismissal of Defendant's counterclaims did not come about by anything Plaintiff initiated: "without knowledge or consent of Plaintiff" Great West paid Defendant the full amount of $12,825 for air evacuation provided Plaintiff. (Plaintiff's Brief, pp. 5-6)

Defendant in its FACC alleged that because Plaintiff accepted Defendant's air evacuation services and did not submit the proper documentation to Great West, Plaintiff was obligated to pay Defendant in the amount of $12,825 for that service.  Defendant also alleged that Plaintiff breached the implied covenant of good faith and fair dealing by: (1) not submitting the proper documentation to Great West for payment to Defendant; or (2) not paying Defendant himself; or (3) not paying Defendant from the settlement reached with Farmers.  Furthermore, Defendant alleged that Plaintiff was unjustly enriched by receiving Defendant's services and keeping that portion of the settlement with Farmers which was based in part on the cost of air evacuation provided to Plaintiff by Defendant.  Defendant asked for an award of damages in the amount of $12,825.

Defendant submitted a second request for payment to Great West who in turn paid Defendant the full amount of $12,825 for air evacuation transportation provided on October 4, 2003 to Plaintiff.  Such payment was made "without knowledge or consent of Plaintiff." (Plaintiff's Brief, pp. 5-6)  Defendant's recovery of its costs in full was not the result of any motion by Defendant or an order of the Court.  Payment was made independent of the litigation. *McAlister,* 171 Ariz. at 216, 829 P.2d at 1262 (payment made independently of the litigation had no bearing on determination of which party was the successful party). Having been paid in full there was no case or controversy before the Court.  Defendant did not prevail on the merits or obtain its requested relief from Plaintiff.  Dismissal of Plaintiff's class action did not come about by causing Plaintiff to voluntarily change his conduct or by affecting the behavior of the Plaintiff toward Defendant.  Resolution of both Plaintiff's and

Defendant's actions leaves no clear victor and thus neither Plaintiff nor Defendant are "successful parties" within the meaning of A.R.S. §12-341.01(A).  Therefore, neither party is entitled to fees under section 12-341.01(A).

### B.  HARASSING, GROUNDLESS, BAD FAITH CLAIMS

Pursuant to statute an award of attorneys' fees by a trial court is conditionally mandatory:

> The court **shall** award reasonable attorney fees in any contested action upon clear and convincing evidence that the claim or defense constitutes harassment, is groundless and is not made in good faith.

A.R.S. §12-341.01(C) (emphasis added); or alternatively:

> ...the court **shall** assess reasonable attorney fees,....,if the attorney or party...:
> 1.  Brings or defends a claim without substantial justification.
> ***
> ..."without substantial justification" means that the claim or defense constitutes harassment, is groundless and is not made in good faith.

A.R.S. §12-349(A)(1),(F)  (emphasis added).

An award of attorneys' fees under either statute's mandate is punitive in nature designed to reduce frivolous litigation by increasing the threat of fee sanctions.  *Chavarria v. State Farm Mutual Automobile Ins. Co.,* 165 Ariz. 334, 337, 798 P.2d 1343, 1346 (App. 1990); *Wean Water, Inc. v. Sta-Rite Indus. Inc.,* 141 Ariz. 315, 318, 686 P.2d 1285, 1288 (App. 1984).  Under either statute all three elements must be shown and the trial court must make appropriate findings of fact and conclusions of law.  *Fisher v. National General Ins.,* 192 Ariz. 366, 370, 965 P.2d 100, 104 (App. 1998) (*citing State v. Richey,* 160 Ariz. 564, 565, 774 P.2d 1354, 1355 (1989); *Gilbert v. Board of Med. Exam'rs,* 155 Ariz. 169, 180, 745 P.2d 617, 629 (App. 1987) *superseded on other grounds by statute as stated in Goodman v. Samaritan Health Sys.,* 195 Ariz. 502, 508, 745 P.2d 617, 628 (App. 1987)).  Section §12-341.01(C) requires proof of all three elements of vexatious litigation by clear and convincing evidence while section 12-349(A)(1),(F) requires proof of same by only a preponderance of the evidence.  *City of Casa Grande v. Arizona Water Co.,* 199 Ariz. 547, 555, 20 P.3d 590, 598 (App. 2001); *Phoenix Newspapers, Inc., v. Department of Corrections,* 188 Ariz. 237,

14

934 P.2d 801 (App. 1997).  "Clear and convincing evidence" is a heightened standard of proof that indicates the thing to be provided is either highly probable or reasonably certain while "preponderance of the evidence" requires a fact-finder to determine whether a fact sought to be proven is more probable than not.  *Kent K. v. Bobby M.,* 210 Ariz. 279, 284-285, 110 P.3d 1013, 1018-1019 (2005).  Proof of harassment and bad faith is measured by a subjective standard while proof of groundlessness is measured by an objective standard. *Gilbert,* 155 Ariz. at 180-181, 745 P.2d at 628-629.

        1.  Harassment

      On October 4, 2003, Plaintiff was provided with air evacuation transportation. The cost of this service provided by Defendant was $12,825.  Before the filing of the instant class action  Defendant made several efforts to collect on its account: (1) filing a Notice of Claim of Health Care Providers Lien on October 29, 2003 and again on August 8, 2005 with the Maricopa County Recorder; (2) contacting Plaintiff directly on January 26, 2004 regarding the outstanding invoice in the amount of $12,825; (3) submitting a claim to Great West in the amount of $12,825 which was denied on March 10, 2004; (4) appealing Great West's denial of its claim which was denied again on June 3, 2005; and (5) assigning collection of the account to two collection agencies.

      On August 6, 2004, Attorney Clark on behalf of Plaintiff contacted Defendant requesting Plaintiff's medical records, presumably for purposes of preparing for trial and/or negotiating a settlement with Farmers. Defendant had referred collection of its account to two collection agencies, Jack's and RES.  Either one or both of these collection agencies contacted Attorney Clark regarding collection of Defendant's account.  Attorney Clark maintains that the two agencies could not agree which of the two would collect on behalf of Defendant nor could they produce proof that they had been assigned the collection account by Defendant.

      On June 3, 2005, Attorney Clark was advised by collection agency RES that the claim submitted to Great West had been denied and that $12,825 was due from Plaintiff for air

evacuation transportation provided Plaintiff on October 4, 2003.  Approximately two months later, August 2, 2005, Plaintiff filed suit against Miller, who had collided with him on October 4, 2003, before the statute of limitations was to expire.

On November 14, 2005, Attorney Clark again corresponded with collection agency RES regarding compromising by half Plaintiff's account of $12,825 with Defendant. Attorney Clark communicated that he was negotiating a settlement on behalf of Plaintiff; that he must negotiate a reasonable amount to be paid all providers in the case; and that time was of the essence.   Attorney Clark also informed RES that if a compromise of the account was not obtained, he probably would ask Plaintiff to retain another attorney from that point forward.[6]

RES responded on November 15, 2005 to Attorney Clark requesting specific information needed to determine whether "available funds are fairly distributed to each eligible party to a settlement." (Joint Report, Ex. E; Defendant's Motion, Ex. 2)  Attorney Clark, apparently signaling an end to "negotiations" wrote on the cover sheet of RES' fax to him "NO thanks. Don't call again. /s/"  and faxed it back to RES.  (Defendant's Motion, Ex. 3)  Attorney Clark equated a request for compromise, which Defendant may or may not accede to, *see* A.R.S. §33-934, with a demand for compromise

Attorney Clark had previously obtained Defendant's cooperation in providing documentation of its costs for air evacuation transportation that he would utilize in ultimately negotiating a settlement for, among other things, payment in full for Defendant's services. Payment in full by check to Defendant jointly with Plaintiff and Attorney Clark was made on January 25, 2006 by Farmers.  Attorney Clark was advised by Farmers that "if [he did] not agree to satisfy all outstanding liens" then he was to return the check immediately to Farmers.  (Defendant's Motion, Ex. 4)

---

[6]However, Attorney Clark did not mention in his correspondence to RES that four days previous, on November 10, 2005, a Notice of Settlement had already been filed in Pima County Superior Court by Farmers.

Attorney Clark asserts that he was in a quandary regarding which of three entities, Defendant or the collection agencies Jack's and RES, was to receive the Farmers check for air evacuation charges, yet he did not interplead this concern under Rules 22(a) and 22(b) of the Arizona Rules of Civil Procedure in *Crane v. Miller*.[7]  Attorney Clark also ignored the mandate of E.R. 1.15 of the Arizona Rules of Professional Conduct which states:

> Upon receiving funds...in which a...third person has an interest, **a lawyer shall promptly notify the...third person.** Except as stated in this Rule or otherwise permitted by law or by agreement between the client and the third person, **a lawyer shall promptly deliver to the...third person any funds...that the third person is entitled to receive,** and upon request by the...third person, shall promptly render a full accounting regarding such property.

E.R. 1.15(d) (emphasis added).

Attorney Clark received funds from Farmers that Defendant as Plaintiff's creditor was entitled to by lien.  Attorney Clark did not notify Defendant that the funds existed and, but for a subpoena issued to a third party, it is highly probable and reasonably certain, that Defendant would not have learned that Farmers had issued a check for payment in full.[8]

---

[7]The Rules of Professional Conduct also recommend interpleader in Attorney Clark's circumstance: "The Rule also recognizes that third parties may have just claims against specific funds or other property in a lawyer's custody, **such as a client's creditor who has a lien on funds recovered in a personal injury action**.  A lawyer may have a duty under applicable law to protect such third-party claims against wrongful interference by the client.  In such cases, **when the third-party claim has become a matured legal or equitable claim,** the lawyer must refuse to surrender the property  to the client until the claims are resolved.  A lawyer should not unilaterally assume to arbitrate a dispute between the client and the third party, but, **when there are substantial grounds for dispute as to the person entitled to the funds, the lawyer may file an action to have a court resolve the dispute.**" 17A  A.R.S. Supreme Court Rules, Rules of Professional Conduct, E.R. 1.15 Safekeeping Property, comment [4]  (emphasis added).

[8]"Native Air later learned through a response to a subpoena it issued to a third party that Mr. Crane's counsel had possession of a check payable to Mr. Crane for the charges to Mr. Crane at issue in this case." (Defendant's Motion for Attorneys' Fees under Rule 16, 54(d) and 28 U.S.C. § 1927, p.2)

Attorney Clark instead filed the instant class action in Pima County Superior Court the same day he signed a stipulation for dismissal with prejudice of Plaintiff's case against Miller.[9]

## FINDINGS OF FACT AND CONCLUSION OF LAW

A finding of harassment is supported by the following:

1. Attorney Clark obtained cooperation from Defendant regarding Plaintiff's debt to Defendant.

2. Attorney Clark invoked the amount of Plaintiff's debt to Defendant to negotiate and arrive at a settlement with Farmers which included a check issued for the specific amount of the debt and naming Defendant as one of the payees.

3. Attorney Clark informed Defendant's collection agency RES that negotiations were still ongoing when in fact a settlement had already been reached.

4. Attorney Clark did not negotiate in good faith with RES.

5. Attorney Clark received a check issued to Defendant jointly with Plaintiff and Attorney Clark for the specific amount of the debt owed to Defendant.

6. Attorney Clark maintains he was in a quandary whether Defendant or one of the two collection agencies was to be paid but failed to interplead pursuant to Rules 22(a) and 22(b) of the Arizona Rules of Civil Procedure his client's creditor, Defendant, which had a lien on funds already recovered in a personal injury action.

7. Attorney Clark failed to follow the precept of E.R. 1.15 of the Arizona Rules of Professional Conduct that when there are substantial grounds for dispute as to the person entitled to funds, he as Plaintiff's attorney should file an action to have a court resolve the dispute. The instant class action as filed by Attorney Clark, who has experience and success

---

[9]Although the Stipulation for Dismissal With Prejudice was signed by Attorney Clark and Attorney Cynthia Choate on behalf of Farmers on January 31, 2006, it was not filed until February 6, 2006.

in representing parties in class actions, was not such an action designed and directed to resolve this dispute.

8. Attorney Clark was informed by Farmers that if he did not agree to satisfy all outstanding liens, including Defendant's lien, from the proceeds of the settlement, he was to return the check made out jointly to Defendant, Plaintiff and himself, immediately which he did not do.

9. Attorney Clark did not negotiate and deposit the check to Defendant to satisfy Defendant's lien but instead kept the check until recently when it was remitted to Farmers and reissued back to Attorney Clark and Plaintiff once Great West paid Defendant's claim. (Plaintiff's Brief, p.5; Joint Report, p.6)

10. When Attorney Clark filed the instant class action, there was no case or controversy: Attorney Clark had filed suit against Miller and settled with Miller's insurer, Farmers, for Defendant's full claim.

11. Attorney Clark was obligated to notify Plaintiff's creditor, Defendant herein, and remit the check issued by Farmers to Defendant to satisfy Defendant's lien.

12. Attorney Clark disregarded, forsook, and failed to meet his ethical obligations as mandated by E.R. 1.15 of the Arizona Rules of Professional Conduct to notify and remit to Defendant third-party creditor and lienholder the funds received from Farmers for payment of Defendant's air evacuation charges.

13. Attorney Clark instead filed a class action in an effort to compromise Defendant's legal claim and settle what Plaintiff believed to be an overcharge (Plaintiff's Brief, p.5) on an already settled claim.

A proper consideration for this Court is whether the invocation of the processes of the law was really necessary. *Associated Indemnity Corp. v. Warner,* 143 Ariz. 567, 694 P.2d 1181 (1985). The instant litigation could have been avoided or settled by Attorney Clark. This conclusion becomes glaringly so in light of a second insurance provider, Great West like Farmers, not taking issue with nor requesting to compromise Plaintiff's debt and paying

19

Plaintiff's debt to Defendant in full.[10] Attorney Clark's unwillingness and resistance to settle for nothing more than one-half of Plaintiff's debt to Defendant precipitated the instant litigation. The instant class action could have been avoided by paying Defendant its due from the settlement or interpleading Defendant and/or collection agencies to determine the proper payee. *See Miller v. Uhrick,* 146 Ariz. 413, 706 P.2d 739 (App. 1985). Given his response to RES on November 15, 2005, it is undoubted that Attorney Clark did not intend to negotiate at all.

Harassment in the filing of the instant action by Attorney Clark has been established by clear and convincing proof, i.e., highly probable or reasonably certain under A.R.S. §12-341.01(C) and   by a preponderance, i.e., more probable than not under A.R.S. §12-349(A)(1),(F).   Herein, the quantum of proof required for the latter is subsumed by the former.

2. Groundless

a.  Preemption

The "groundlessness" of an action is measured by an objective standard, i.e., would a reasonable person have brought the instant action.  *Gilbert,* 155 Ariz. at 628, 745 P.2d at 180. A simple finding by the Court that a claim or defense was "frivolous" is insufficient. *Richey*, 160 Ariz. at 565, 774 P.22d at 1355.

Attorney Clark on behalf of Plaintiff alleged in the FAC that Plaintiff never requested Defendant's services nor agreed to the amount to be paid for such services and did not need such services.  (FAC, ¶7) Moreover, Attorney Clark on behalf of Plaintiff sought certification of the class as:

> All persons in Arizona who were airlifted by [Defendant] form various locations to hospitals or medical facilities and did not specifically request the services and did not consent in writing to the fees to be charged.

---

[10]There is no information to suggest that Great West to date has sued Farmers for subrogation of the claim paid by Great West and previously sought to be paid by Farmers.

(FAC, ¶21) As discussed in section II.A., *supra* at pp. 10-14, the instant action arises from an implied contract.  A determination has been made that there was no successful or prevailing party for purposes of application of A.R.S. §12-341.01(A).  Nevertheless, a thorough review of Plaintiff's complaint and pleadings filed by Attorney Clark reveals no allegation that the fee charged by Defendant was not the customary charge for *air evacuation transportation* of an injured person.  *See* A.R.S. §33-931(A); A.R.S. §36-2239(D),(F), and (G).  Nor is there any claim that Plaintiff ever declined to be treated or transported such that Defendant would be in a position to provide gratuitous services.  *See* A.R.S. §36-2239(K).

The gravamen of Plaintiff's class action against Defendant is that Defendant's rates or prices for air evacuation transportation are excessive.  Attorney Clark was put on notice that the class action filed by him was a groundless class action.  Defendant filed a Notice of Removal alleging diversity and original jurisdiction pursuant to 28 U.S.C. §1332 and that there was a federal question in issue pursuant to 28 U.S.C. § 1331.  That federal question was that Plaintiff's class action was completely preempted by the ADA as codified at 49 U.S.C. § 41713(b)(4)(A).  After removal to this United States District Court, Defendant answered the FAC and reiterated in its affirmative defenses that Plaintiff's class action was preempted by the ADA as codified at 49 U.S.C. § 41713(b)(1).  (FAA/FACC, p.10)

It is well-established law that the Supremacy Clause of the United States Constitution invalidates state and local laws that interfere with, or that are contrary to, the laws of Congress.  *Gibbons v. Ogden,* 22 U.S. (9 Wheat) 1, 211 (1824).  Plaintiff's class action is specifically preempted in that:

> ...a State,...may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

49 U.S.C. §41713(b).  It is also well-established that the filing of Plaintiff's class action regarding the alleged overcharges by Defendant and seeking relief from same is a state enforcement action having a connection with or reference to a price, route, or service of an air carrier preempted by the ADA as codified at 49 U.S.C. §41713(b).  *American Airlines,*

*Inc. v. Wolens,* 513 U.S. 219 (1995); *see also Morales v. Trans World Airlines, Inc.,* 504 U.S. 374 (1992); *National Helicopter Corp. of America v. City of New York,* 137 F.3d 81 (2d Cir. 1998); *Marlow v. AMR Services, Corp.,* 870 F.Supp. 295 (D. Haw. 1994).

<u>b.  No claim, case or controversy</u>

A Notice of Settlement as required by and pursuant to Rule 5.1(c) of the Arizona Rules of Civil Procedure was filed on November 10, 2005 by Attorney Choate on behalf of Farmers who represented Miller in *Crane v. Miller.*  This Court cannot presume that Attorney Choate filed this Notice unilaterally without Attorney Clark's assent.  Attorney Clark has also alluded to a settlement "in November 2005" and a settlement occurring "near the end of 2005."  (Joint Report, p.2; Plaintiff's Brief, p.4)

What is abundantly clear is that as of Attorney Clark's November 14, 2005 correspondence to Defendant c/o RES requesting a compromise, Attorney Clark had a settlement offer from Farmers for $70,000; he recognized that Defendant's claim and lien was $12,825; and that on January 25, 2006 Farmers sent check number 1015218833 in the amount of $12,825 made payable to Attorney Clark, Plaintiff and Defendant to satisfy Defendant's lien.  (Defendant's Motion, Ex, 1, 4) Failing to negotiate and deposit this check did not absolve Attorney Clark from his duty, pursuant to E.R. 1.15 Arizona Rules of Professional Conduct, to report and remit the check to Defendant.

On January 31, 2006, when the stipulation for dismissal with prejudice was signed by Attorney Clark and Attorney Choate and Plaintiff's class action was filed,  Defendant's claim with Plaintiff had already been settled.

Defendant's claim for $12,825, whether Attorney Clark found it reasonable or not, had already been sought to be paid by Farmers when the instant class action was filed.  Any issue regarding Defendant's entitlement to payment in full for its claim had already been resolved. Upon the filing of the instant class action there was no claim, case or controversy.

As Attorney Clark has averred: Plaintiff has no present complaint against Defendant, as the debt, if any, has been paid and the lien released "and Plaintiff is not concerned with

whether or not the charges are reasonable as they have been paid."  (Joint Report, p.7) The caveat to Attorney Clark's averment is:  provided Defendant's claim is paid by someone other than Plaintiff or not out of Plaintiff's settlement with Farmers.

The filing of the instant class action on January 31, 2006 was groundless and unsustainable.

### FINDINGS OF FACT AND CONCLUSION OF LAW

Plaintiff's claim and class action were completely preempted by federal law and Attorney Clark was twice put on notice of same.  Moreover, there was no claim, case or controversy when the instant class action was filed inasmuch as Defendant's claim for payment for air evacuation transportation provided Plaintiff on October 4, 2003 had been satisfied by Farmers.   Attorneys' fees could have been avoided:

> Attorney fees shall not be assessed if after filing an action a voluntary dismissal is filed for any claim or defense within a reasonable time after the attorney or party filing the dismissal  knew or reasonably should have known that the claim or defense was without substantial justification.

A.R.S. §12-349(C).  If Attorney Clark had filed a voluntary dismissal of the class action in timely fashion, such act would have seriously undermined and undercut, if not completely dispelled, any one of the elements of harassment, groundlessness or bad faith of A.R.S. § 12-341.01(C).

"Groundlessness" in the filing of the instant action by Attorney Clark has been established by clear and convincing proof, i.e., highly probable or reasonably certain, under A.R.S. §12-341.01(C) and by a preponderance, i.e., more probable than not under ARS §12-349(A)(1),(F).  Herein, the quantum of proof required for the latter is subsumed by the former.

### 3. Bad Faith

Bad faith in the filing of an action requires a subjective standard of proof.  *Gilbert,* 155 Ariz. at 181, 745 P.2d at 629.  Rarely will litigants openly admit, let alone give evidence, that their motives were for oppressive reasons. *See Nationwide Resources Corp. v. Ngai,* 129

Ariz. 226, 231, 630 P.2d 49, 54 (App. 1981) (Defendant admitted the counterclaim was without legal basis and made to harass the plaintiff for bringing the suit). Bad faith may be found in the conduct of litigation as well as the conduct that gives rise to the litigation. *London v. Green Acres Trust,* 159 Ariz. 136, 146, 765 P.2d 538, 548 (App. 1989) (*citing Hall v. Cole,* 412 U.S. 1, 15 (1973) *superseded by statute on other grounds*). Contrary to Attorney Clark's assertion that:

> [a]fter some research it was found that there were no regulations on the charges of air ambulance companies like there were for regular ambulance companies...[s]tatutes that apply to the rates of ambulance services such as A.R.S. §36-2239 do not cover air ambulances....

(Plaintiff's Brief, p.5), the definition of "ambulance" includes helicopters which in turn is included in "ambulance services" and the rates, fares or charges are regulated. A.R.S. §§36-2201(3),(5); 36-2212; 36-2213; 36-2214; 36-2231; 36-2234.

Attorney Clark took issue with the amount Defendant charged for air evacuation transportation and filed the instant class action. Although not mandatory, alternative dispute resolution was and is available to anyone who has availed himself of air evacuation transportation:

> If the [D]epartment [of Health Services] receives a written and signed statement of **dissatisfaction** or **dispute of charges**..., the customer is deemed to have filed an informal complaint against the ambulance service...

A.R.S. §36-2245(C) (emphasis added). Within fifteen days the ambulance service will be informed: (1) that an informal complaint has been filed; (2) of the nature of the allegations; (3) of the purported rule violation; and (4) of the specific records the ambulance service is required to provide the Department of Health Services. *Id.*

Within forty-five days the Department shall determine whether the complaint is substantive or non-substantive. A.R.S. §36-2245(D). If the Department determines the complaint is non-substantive, the complainant is entitled to file a formal complaint with the Department if he disagrees with the Department's finding. A.R.S. §36-2245(E). If the non-

24

substantive complaint involves rates and charges a designated representative of the Department:

> ...shall attempt to resolve the dispute by correspondence or telephone with the ambulance service and customer.

*Id.* The Department can also impose disciplinary action which may include stipulated agreements and civil penalties. A.R.S. §36-2245 (I). A final decision of the Department is subject to judicial review. A.R.S. §36-2245(L). No effort was made to take advantage of administrative remedies and avoid the instant meritless litigation.

A litigant  is not usually entitled to attorneys' fees from his opponent. Each party usually bears the costs of litigation unless the recovery is authorized by statute. This doctrine is well-settled in Arizona. *Sellinger v. Freeway Mobile Homes Sales, Inc.,* 110 Ariz. 573, 577, 521 P.2d 1119, 1123 (1974); *State v. Mahoney,* 103 Ariz. 308, 310, 441 P.2d 68, 70 (1968); *Commercial Standard Ins. Co., v. Cleveland,* 86 Ariz. 288, 294, 345 P.2d 210, 215 (1959); *O.S. Stapley Co. v. Rogers,* 25 Ariz. 308, 314, 216 P. 1072, 1074 (1923). The Arizona Supreme Court has adopted language from the United States Supreme Court discussing the federal bad faith exception to this doctrine:

> ...there must be more than a mere lack of good faith. The plaintiff must show that the defendants acted vexatiously, wantonly, or for oppressive reasons.

*Taylor v. Southern Pacific Transportation Co.,* 130 Ariz. 516, 523, 637 P.2d 726, 733 (1981) (*citing Hall,* 412 U.S. at 1). Federal courts find bad faith if the claim or defense totally lacks legal merit and if it was made for improper purposes. *Nemeroff v. Abelson,* 620 F.2d 339, 348 (2d Cir. 1980). Thus a claim or defense is meritless if a party knew or should have known that his claim or defense is unsustainable and the party continued litigation for reasons of harassment.

As set out in sections II.B.1. and 2., *supra* at pp.14-23, harassment and groundlessness have been established by clear and convincing proof which subsumes proof by a preponderance. Attorney Clark's conduct leading to the instant action belie a subjective good faith belief that this action should have been filed.

...the fact that a subjective standard is applicable does not mean that a party can pursue a claim on nothing more than the unreasonable hope that he may discover a basis for the lawsuit.  These circumstances in themselves are evidence of the absence of a subjective good-faith belief.

*Gilbert,* 155 Ariz. at 181, 745 P.2d at 629.  Thus, the issue was not Plaintiff's chances of prevailing on his claims, but rather, that Plaintiff's position was so indefensible as to be frivolous.

### **FINDINGS OF FACT AND CONCLUSION OF LAW**

The absence of subjective good faith is supported by the following:

1.  Attorney Clark was aware of Defendant's charge for air evacuation transportation provided his client.

2.  Attorney Clark invoked the amount of Defendant's charge for air evacuation transportation to negotiate and arrive at a settlement with Farmers to, among other things, pay Defendant in full as evidenced by check number 1015218833 issued by Farmers specifically in Defendant's name jointly with Plaintiff and Attorney Clark.

3.  Attorney Clark knew that Defendant's collection agency RES had made a claim with Great West for air transportation evacuation charges and that such claim had been denied.

4.  Attorney Clark knew that Defendant had properly filed a Notice of Claim of Healthcare Providers Lien on October 29, 2003,  twenty-five days after Plaintiff had been provided air evacuation transportation by Defendant and again on August 8 2005, six days after Plaintiff filed suit in *Crane v. Miller.*

5.  On November 10, 2005, a formal Notice of Settlement pursuant to Rule 5.1(c) of the Arizona Rules of Civil Procedure was filed by Attorney Choate, with Attorney Clark's presumed assent, that *Crane v. Miller* had been settled.  Attorney Clark has pleaded at various times that suit was settled in November 2005 (Joint Report, p.2); or "near the end of 2005."  (Plaintiff's Brief, p.4) On November, 14, 2005, Attorney Clark instead informed Defendant c/o RES that he was still negotiating a settlement with Farmers.  Attorney Clark

did not "negotiate" in good faith with Defendant's collection agency RES to compromise Defendant's charge for air evacuation transportation provided his client.

6.  Attorney Clark maintains that there was a question whether Defendant or one of two collection agencies assigned by Defendant, RES or Jack's, was to be paid the settlement from Farmers for Defendant's air evacuation charge.

7.  Attorney Clark maintains that neither collection agency could ever produce evidence of the assignment by Defendant nor did he have proof that Defendant actually assigned the account to either collection agency.  (Plaintiff's Brief, p.4)

8.  Given a claimed quandary regarding who was to receive the settlement arrived at with Farmers to pay Defendant's air evacuation charge, there is nothing before this Court that Attorney Clark sought to interplead pursuant to Rules 22(a) or 22(b) of the Arizona Rules of Civil Procedure, Defendant, RES, and/or Jack's.  *See* Section II.B.1 *supra* at pp. 15-20. Instead, Attorney Clark signed a Stipulation for Dismissal With Prejudice on January 31, 2006 and filed the FAC that same day: five days after receiving a check from Farmers satisfying Defendant's lien in full.

9.  Given a claimed quandary regarding who was to be paid the settlement arrived at with Farmers to pay Defendant's air evacuation charge, there were arguably substantial grounds for dispute as to the person or entities entitled to settlement funds such that Attorney Clark should have interpleaded Defendant, RES, and/or Jack's. E.R. 1.15 comment [4], Arizona Rules of Professional Conduct.

10.  Attorney Clark received on January 26, 2006 checks issued by Farmers to settle all outstanding liens, including Defendant's lien in full for air evacuation provided to Plaintiff on October 4, 2003.

11.  An attorney is mandated to promptly notify a third person, such as Plaintiff's creditor Defendant, who has a lien on funds recovered in a personal injury action, such as in *Crane v. Miller,* upon receiving such funds.  E.R. 1.15, Arizona Rules of Professional Conduct.

12.  Attorney Clark disregarded, forsook, and failed to meet his ethical obligation to promptly notify Defendant that a settlement check had been received.

13.  Defendant instead discovered by a subpoena issued to a third party that Farmers had issued a check for payment in full for Defendant's air evacuation charge and that Attorney Clark had received and kept that check.

14.  An attorney is mandated to promptly deliver to a third person, such as Plaintiff's creditor Defendant, who has a lien on funds recovered in a personal injury action, such as in *Crane v. Miller,* any funds that the third person is entitled to receive.  E.R. 1.15, Arizona Rules of Professional Conduct.

15.  Attorney Clark disregarded, forsook, and failed to meet his ethical obligation to promptly deliver the settlement check that had been received.[11]

16.  The record before the Court indicates that it is highly probable and reasonably certain that Attorney Clark would have continued uncommunicative regarding satisfaction of Defendant's air evacuation charge by the Farmers-issued check but for a response to a subpoena issued to a third party by Defendant.

17.  Attorney Clark maintains that the air evacuation transportation charge was unreasonable and that Plaintiff had been overcharged.

18.  Although not mandatory, Attorney Clark on behalf of Plaintiff had available alternative dispute resolution regarding dissatisfaction or dispute of Defendant's charges for air evacuation transportation, did not avail himself of such, and instead pursued a costly class action taxing the Court's and Defendant's processes, resources and time on a meritless claim.

19.  Attorney Clark was placed on notice through Defendant's Notice of Removal to District Court and once again by Defendant's affirmative defenses to the class action that Plaintiff's suit was a state enforcement action preempted by the ADA as codified at 49 U.S.C.

---

[11]Unless otherwise exempt, all active members of the State Bar of Arizona must read and certify compliance with Rule 43 of the Arizona Supreme Court and E.R. 1.15 of the Arizona Rules of Professional Conduct when paying annual state bar dues.

§ 41713(b)(4)(A) because it would otherwise have the force and effect of law related to pricing, rates and charges.

20.   Attorney Clark knew or reasonably should have known that Plaintiff's claims were preempted by federal law and did not voluntarily dismiss or withdraw his claims within a reasonable time after notice of same to avoid assessment of attorneys' fees pursuant to A.R.S. §12-349(C) and persisted with the instant action until at least April 4, 2006 when Defendant's second request for payment to Great West was successful and payment to Defendant was made in full.

21.   Attorney Clark acknowledges that as a result of Great West paying Defendant in full the amount Plaintiff was charged by Defendant, Plaintiff was no longer eligible as a class Plaintiff and thus had no claim against Defendant.  (Joint Report, p.7)

22.   Attorney Clark avers that once the debt was paid by Great West and the lien released, Plaintiff was not concerned with whether the charges were reasonable.  (Joint Report, p.7)

23.   The charges by Defendant, reasonable or not, had already been willingly paid by Farmers when the instant class action was filed.  At the moment of receipt of check number 1015218833 issued by Farmers, Defendant was entitled to notification and receipt of funds in Attorney Clark's possession and control.  The issue of Defendant's charges, reasonable or not, had been resolved and satisfied.  Upon the filing of the instant class action there was no legal claim, case or controversy.  The instant class action was meritless, unsustainable and frivolous.

24.   Attorney Clark avers that "Plaintiff was clearly not trying to use the litigation system as a 'source of income.'  All Plaintiff was trying to do was to resolve his personal injury claim and his dispute with Native Air concerning what he considered to be an unjustified overcharge for services he never requested.  He could never negotiate a compromise payment with Native American Air because of its assignment of its claim to two

different collection agencies, neither of which could agree on which was entitled to payment." (Plaintiff's Opposition, p.5) Belying this position is Attorney Clark's:

1.   successful negotiation and settlement in full of Defendant's lien by the November 10, 2005 Notice of Settlement filed in *Crane v. Miller* in Pima County Superior Court;

2.   a November 14, 2005 letter to Defendant c/o RES seeking to "negotiate" a compromise of Defendant's lien against Plaintiff;

3.   a November 15, 2005 rebuff to RES' request for information needed to consider compromise;

4.   receipt of funds on January 26, 2006 to resolve and satisfy Defendant's lien in full;

5.   failure to notify Defendant and remit settlement funds to Defendant that it was legally entitled to receive and which Attorney Clark as obligated to do by Ethical Rule 1.15, Arizona Rules of Professional Conduct;

6.   failure to interplead or seek administrative dispute resolution and instead filing a class action preempted by federal law and which had no basis given that Defendant's air evacuation charges had been satisfied by Farmers;

7.   averment that "[t]he outcome of this litigation was not that Native Air received payment in full for all services rendered to Plaintiff, it was that Native Air apparently, after two and a half years, did what it should have done with [Great West] long ago to get paid and did it only because it had been sued and, in so doing, would destroy Plaintiff's claim and Plaintiff's ability to act as a class representative." (Plaintiff's Opposition, p.4 (emphasis in original)) However, this assertion is without merit given Attorney Clark's acknowledgment that Defendant, prior to the filing of the instant action, had submitted a claim for

payment with Great West but the claim was denied on March 10, 2004; that on June 3, 2005 he was advised that an insurance appeal had been denied by Great West and that $12,825 was due from his client. (Joint Report, pp. 4, 5)

8.  remittance of the settlement check by Farmers to Farmers after Great West paid Defendant "in full and at not cost to Plaintiff" and a check reissued to Plaintiff and Attorney Clark only. (Plaintiff's Brief, pp.5, 6; Joint Statement, p.6)

Bad faith in the filing of the instant action by Attorney Clark  has been established by clear and convincing proof, i.e., highly probable or reasonably certain, under A.R.S. § 12-341.01(C) and by a preponderance, i.e., more probable than not under A.R.S. § 12-349(A)(1),(F). Herein, the quantum of proof for the latter is subsumed by the former.

C.   RULE 11 SANCTIONS

Pursuant to Rule 11 of the Federal Rules of Civil Procedure, the Court may award sanctions upon motion of a party only after the movant has complied with the safe harbor provision which requires that the movant serve such motion upon opposing counsel 21 days before the filing of same with the Court. Fed.R.Civ.P. 11(c)(1)(A); *see also Patelco Credit Union v. Sahni,* 262 F.3d 897, 913 (9th Cir. 2001) (award of sanctions under Rule 11 is discretionary). Rule 11 also requires that the motion for sanctions be made separately from any other motion or request. Fed.R.Civ.P. 11(c)(1)(A). "A party defending a Rule 11 motion need not comply with the separate document and safe harbor provisions when counter-requesting sanctions." *Patelco Credit Union,* 262 F.3d at 913. Both parties herein are movants given that the parties filed simultaneous briefs requesting Rule 11 sanctions.

It is clear on the record that the parties' motions for Rule 11 sanctions were served and filed after the July 7, 2006 dismissal of this action as moot. The record does not reflect that either counsel complied with the requirements of Rule 11(c)(1)(A). "The purpose of the safe harbor...is to give the offending party the opportunity, within 21 days after service of the

motion for sanctions to withdraw the offending pleading *and thereby escape sanctions.*" *Barber v. Miller,* 146 F.3d 707, 710 (9th Cir. 1998) (emphasis in original) (noting that a party's prior "multiple warnings...about the defects of [the adverse party's] claim...were not motions"and therefore did not satisfy Rule 11).   Therefore, "'[g]iven the safe harbor provisions..., a party cannot delay serving its Rule 11 motion until conclusion of the case (or judicial rejection of the offending contention.)'" *Id.*  at 710-711 *(quoting* Fed.R.Civ.P. 11 Adv. Comm. Notes, 1993 Amend.).   Both parties herein "did not serve or file [their] motion[s] until well after the time in which [the opposing party] could correct or withdraw" the offending pleading had lapsed. *Retail Flooring Dealers of America, Inc. v. Beaulieu of America, LLC,* 339 F.3d 1146, 1151 (9th Cir. 2003).   "An award of sanctions under these circumstances would frustrate the safe harbor provision." *Id.*   (reversing award of Rule 11 sanctions where movant defendant served motion after the complaint had been dismissed).   Furthermore, the district court's retention of this matter after dismissal for purposes of considering sanctions motions is not an equivalent of an election by the court to impose sanctions on its own motion. *Barber,* 146 F.3d at 711.

## FINDINGS OF FACT AND CONCLUSION OF LAW

Neither counsel has complied with the requirements of Rule 11(c)(1)(A) of the Federal Rules of Civil Procedure and thus attorneys' fees should not be awarded under this Rule.

### D.    28 U.S.C. §1927

Pursuant to Federal statute, an attorney may be required to pay attorneys' fees, costs, and expenses:

> Any attorney...admitted to conduct cases in any court of the United States...who so multiplies the proceedings in any case unreasonably and vexatiously **may** be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927 (emphasis added).  An award of attorneys' fees under this statute is permissive and thus discretionary. *Patelco Credit Union,* 262 F.3d at 912-913.; *Barber,* 146 F.3d at 711.

Aside from the filing of Plaintiff's FAC and Defendant's Notice of Removal and FAA/FACC, no other significant pleadings have been filed.  For sanctions to apply under section 1927, it is:

the *multiplication* of proceedings [which] is punished, thus placing *initial* pleadings beyond its reach.

*Zaldivar v. City of Los Angeles,* 780 F.2d 823, 831 (9th Cir. 1986) (emphasis in original), *overruled on other grounds by Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384 (1990) *superseded on other grounds by 1993 Amendment to Fed.R.Cvi.P. 11*; *see also In re Keegan Mgmt. Co.,* 78 F.3d 431, 435 (9th Cir. 1996) (same).  "'For a sanction to be validly imposed the conduct in question must be sanctionable under the authority relied on.'"  *In re Keegan Mgmt. Co.,* 78 F.3d at 435 (*quoting Cunningham v. County of Los Angeles,* 879 F.2d 481, 490 (9th Cir. 1988)).  The conduct complained of herein is not sanctionable under section 1927.

## FINDINGS OF FACT AND CONCLUSION OF LAW

Attorneys' fees under 28 U.S.C. § 1927 are inappropriate.

## III.    CONCLUSION

For the foregoing reasons, harassment, groundlessness, and bad faith by Attorney Clark have been established by clear and convincing proof pursuant to A.R.S. § 12-341.01(C) and by a preponderance pursuant to A.R.S. § 12-349(A)(1),(F), and the Magistrate Judge recommends that the District Court grant Defendant's Motion for Attorneys' Fees (Doc. No. 25) and award Defendant attorneys' fees to be paid by Attorney Douglas H. Clark, Jr., in an amount to be determined by future Report and Recommendation upon referral to the Magistrate Judge for determination of such amount. The Magistrate Judge further

recommends that the District Court deny Plaintiff's request for attorneys' fees set forth in Plaintiff's Brief on Issue of Liability and Entitlement of Attorneys' Fees (Doc. No. 22).

Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections within ten days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within ten days after being served with a copy thereof. Fed.R.Civ.P. 72(b). If objections are filed, the parties should use the following case number: **CV 06-0092-TUC-FRZ**.

If objections are not timely filed, then the parties' right to *de novo* review by the District Court may be deemed waived. *See United States v. Reyna-Tapia,* 328 F.3d 1114, 1121 (9th Cir.) (*en banc*), *cert. denied,* 540 U.S. 900 (2003).

DATED this 26th day of January, 2007.

_____
Héctor C. Estrada
United States Magistrate Judge